## Collinsworth v. Ironton Lumber Company.

(Decided May 27, 1924.)

### Appeal from Boyd Circuit Court.

1. Partnership—Witnesses—Statements Out of Court Held Not Substantive Evidence of Patrnership But Only Admissible for Impeachment.—Statements of witness out of court, and not in presence of alleged partner, are not substantive evidence against latter of existence of partnership, and may be only received to contradict witness' testimony in court or to impeach him.

2. Partnership—Weight of Evidence Against Finding of Partnership.—Weight of evidence held against finding of partnership.

3. Work and Labor—One Cannot Take Logs Without Paying Therefor, though not Delivered at Point Agreed.—Lumber company could not take and keep logs cut and delivered at a creek without paying for them, though contract provided there should be no liability, unless logs were delivered at another place, but should be required to pay contract price, less reasonable expense of getting them to agreed place of delivery.

4. Work and Labor—Defendant, Taking Charge of Work and Completing what Plaintiff was to do, is Liable to Latter at Least on a Quantum Meruit.—Where defendant takes charge of thing, and completes what plaintiff was to do on it. he is liable at least on quantum meruit for work plaintiff has done, which should be contract price, less reasonable expenses in completing.

5. Logs and Logging—Owner of Timber Cut and Delivered by Others Held to have no Lien.—Owner of timber who consented to its cutting by others under contract of sale with lumber company has

no lien on timber, but can look only to balance due cutters from the company.

6.  Logs and Logging—Burden of Proof on Purchaser to Show Logs Lost After Taking Possession.—Where purchaser of logs took possession of them at a creek instead of at point where they were to be delivered under contract, it should be charged with contract price, less reasonable expenses of getting logs to agreed place of delivery, unless it shows what part of logs were lost or not received at agreed point of delivery.

C. B. WHEELER for appellants.

S. S. WILLIS for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

On September 11, 1916, John W. Runyon and Henry W. Hobson entered into a written contract with the Ironton Lumber Company by which they sold and agreed to deliver to it about one thousand oak and poplar trees, well rafted and in good condition, at Catlettsburg, Kentucky, the contract containing the following provisions:

"Which said timber stands on the lands known as the Minta Richmonds lands on Rock House fork Rock Castle creek.

"The white oak and chestnut oak logs to be delivered hereunder are to be cut from trees that measure at least 18 inches and up in diameter, clear of bark, three feet from the ground on upper side of tree.

"The poplar and cucumber logs to be delivered hereunder are to be cut from trees measuring at least 16 inches and up, clear of bark, three feet above ground on upper side of tree.

"The party of the first part shall begin cutting and hauling operations at once, and shall cut all of said timber during the months of Sept. and Oct., 1916, and shall place same in creek after danger of ice is past and deliver all of said logs at point of delivery above named on or before November 1, 1917, and party of the second part shall not be obligated to take any of same not delivered by said time, though it shall have the option of doing so if it so elects.

"Party of the first part agrees to diligently prosecute the work of getting out said timber and to

deliver same at the earliest possible time considering the water condition and danger of ice.

"When said timber reaches point of delivery, first party is to notify second party thereof and it shall as soon as convenient and practicable measure same and the measurement thereof shall be made in accordance with the Big Sandy rules of measurement and computation of contents made by and in acordance with 'Goble's Log Sheet.'

"The purchase price of said timber at the delivery point in the log shall be as follows: white and chestnut oak, per cube, for poplar, white oak and chestnut oak 16 inches and up at measuring place 24 cts. per cube, 14x15 inches at meas. place 18 cts. per cube, poplar 18 inches and up at meas. place 1¾ cents for average inch, all fractions off. ·Pop. 15-16-17 inches 25c. Pop. 13-14 inches 20c.

"It is further agreed that the party of the second part shall advance from time to time on monthly estimates of timber hauled to bank at or about 10 cts. per cube, based upon said estimates and upon making of measurements on creek ·bank, party of the second part shall place its brand upon said timber and title and possession thereof shall immediately pass to it, but there shall be no liability on its part for the purchase price unless same are delivered at Catlettsburg within the time as herein provided.

"Upon final measurement at Catlettsburg, there shall be deducted from the purchase price, first the advancements and the balance, if any, shall be credited upon the amount advanced for stumpage, if any, and interest thereon and ·any other lump sum advancements which second party (though not obligated to do so) may make and which if made shall bear interest at the rate of 6% per annum from the making thereof until paid.

"After making such credits ·and deductions the ·balance of the purchase price, if any, found to be due shall be paid in cash to party of the first part."

Runyon and Hobson did not then own the timber in controversy, but they made an arrangement with M. B. Collinsworth, under which Collinsworth bought the timber from the owners for $4,500.00 and made arrangement with Runyon and Hobson under which they proceeded to get out the timber. There was no written contract then executed between Collinsworth and Runyon and Hobson,

but on December 14, 1916, they delivered to Collinsworth the following order on the Ironton Lumber Company:

"This December 14, 1916, Ironton Lumber Company, Ironton, Ohio. Please pay to M. B. Collinsworth $500.00 cash, and $4,130.00 to be paid out of advancement due us on all the oak saw log timber 18″ and up in diameter stump high and on soft wood 16″ and up stump high all the timber we are hauling on Rock House fork of Rock Castle, being the purchase money due M. B. Collinsworth for said timber; also 2c per cube commission on all said timber and charge same to our account, balance to be paid during spring, 1917.

"Runyon & Hobson."

Collinsworth presented his order promptly.

The proof conflicts as to what was said. According to the proof for him the agent of the company said he would not accept the order in writing as Runyon and Hobson had not then delivered the timber, but that he would pay it as the timber came in and money was due Runyon and Hobson thereon. He afterwards paid Collinsworth at one time $500.00 on the order and later $250.00 more. The agent says he did not agree to pay the order at all.

On April 2, 1917, Collinsworth brought this action against Runyon and Hobson and the Ironton Lumber Company, alleging that $4,800.00 was due him, balance of the purchase money for the timber that Runyon and Hobson had cut. He took out an attachment and levied on some of the logs then at Catlettsburg. The Ironton Lumber Company gave bond and took the logs. It filed an answer in which it denied the allegations of the plaintiff's petition. It pleaded in substance that Collinsworth, Runyon and Hobson formed a partnership under the firm name of Runyon and Hobson, and that the contract was made with this firm; that it had advanced the firm $6,915.28 and had only received timber amounting to $6,592.74, leaving a balance due it of $322.54, which it pleaded as a counterclaim.

The issues were made up, a large mass of proof was taken and on final hearing the circuit court dismissed Collinsworth's petition and gave judgment against him and Hobson in favor of the Ironton Lumber Company on its counterclaim for $322.54. From this judgment Collinsworth and Henry Hobson appeal.

The first question to be determined in the case is, what was the contract between Collinsworth and Runyon

and Hobson? Collinsworth and Hobson testify that the arrangement was that Collinsworth would buy the lumber and pay $4,500.00 for it and that Runyon and Hobson were then to cut the timber and out of the proceeds pay Collinsworth the $4,500.00, the price he paid for it plus $130.00 interest on his money, plus two cents a cube of the timber cut for his profit in the transaction. On the other hand, John W. Runyon testifies that Collinsworth was an equal partner in the transaction and that the arrangement was that he was to be a secret partner and he was to receive one-third of the net profits of the transaction. Although Henry Hobson testifies as a witness that this was not the arrangement and that the arrangement was as stated by Collinsworth, it is shown that about the time this suit was brought he was in an attorney's office and his statements were taken down by a stenographer, and as then taken down he stated the facts the same as Runyon. He denies making these statements, but the proof is satisfactory that he did make them.

It is earnestly insisted that the testimony of Runyon, supported by the statements of Hobson out of court before he became involved in the controversy, establish what is the real truth of the matter; but it must be borne in mind that the statements of Hobson, out of court and not in the presence of Collinsworth, are not substantive evidence against him. It may be only received to contradict Hobson's testimony in court or to impeach him as a witness and, if we leave out his testimony entirely, we have only the testimony of Collinsworth on one side and Runyon on the other; both testifying for themselves and Runyon so testifying after he had fallen out with Collinsworth. In this equilibrium of the testimony the court must look to the facts shown to decide the question. Runyon testifies that after they made the contract he and Hobson spent about $1,500.00 in making splash dams and the like and all of this expense was equally borne by him and Hobson. Collinsworth was not consulted about it and had nothing to do with it. Runyon and Hobson furnished the teams and got out the logs; they did not call on Collinsworth for help and he was not about the job while they were working on it. After they began shipping the timber, checks came in from time to time payable to Hobson and Runyon; out of these checks from time to time a certain amount was paid to John Runyon and always the same amount to Henry Hobson; nothing was paid to Collinsworth.

In addition to this some force must be given the writing executed on December 14, 1916, above quoted. Runyon says that this writing was drawn to make a change in the previous understanding, but he shows no consideration for any such change or any reason why he should have agreed to it. Runyon did not make this claim at any time until Collinsworth had taken possession of the timber and made another contract with Henry Hobson for the cutting of other timber on the land and had left Runyon out, and on all the facts the clear weight of the evidence is with Collinsworth in his version of the arrangement between him and Runyon and Hobson. In Boreing v. Wilson, 128 Ky. 596, this court thus stated the rule on the subject:

"Each case depends upon its particular facts. After all, the intention of the parties is the controlling element. When the parties intend a co-ownership of the profits of a business, a partnership necessarily follows. But, however great the diversity of opinion among the courts, the law is well settled that where the parties, by their acts, conduct and writings, show that they intend a partnership, and did in fact agree to share the profits of the business, as joint owners, such parties are partners."

Here the parties did not by their acts, conduct or writings show that they intended a partnership. We, therefore, conclude that the court erred in holding Collinsworth a partner of Runyon and Hobson and giving judgment against him as such.

The evidence is not such as to enable us intelligently to settle the account between the Ironton Lumber Company and Runyon and Hobson. The facts are these:

Runyon and Hobson cut and delivered at the creek about sixteen hundred logs, or something over a thousand trees; the timber was there received and branded by the Ironton Lumber Company. About eight hundred of these logs were rafted and carried to Catlettsburg by Runyon and Hobson and there received by the Ironton Lumber Company. The other logs were not rafted and run out by Runyon and Hobson, but as we understand the record, were all run out later and were received by the Ironton Lumber Company, except so far as some were carried out on the ice and were lost, but how many were lost does not appear. The Ironton Lumber Company furnishes no statement of how many it received. The testimony in

the record is, that a committee was appointed to ascertain this and the committee has not reported. The Ironton Lumber Company only credits Runyon and Hobson with the logs which they delivered. It gives them no credit for the logs cut under the contract and delivered on the bank of the creek, and received by the company there. It is true that the contract provides: "That there shall be no liability on its part for the purchase price unless same are delivered at Catlettsburg within the time as herein provided," but the company cannot take the logs and keep them without paying for them. The proof shows that the cost of taking the logs to Catlettsburg would reasonably be about four cents a cube. The company should pay the contract price for these logs, less its reasonable expense in getting them out and any damage to the timber by reason of the delay. A large part of the money advanced was advanced on these logs. These were accepted and branded logs but have not been paid for. Any balance which may be found due Runyon and Hobson from the Ironton Lumber Company on a settlement for these logs should be paid to Collinsworth on his order.

The general rule is that where the defendant takes charge of the thing and completes what the plaintiff was to do on it, under the contract he is liable to the plaintiff at least on a *quantum meruit* for the work he has done (notes 19 Am. Dec. 272); and we know of no better way, on the facts of this case, to arrive at what in equity is right and just, than to take as the basis the contract price less the defendant's reasonable expenses in completing the contract.

Collinsworth has no lien on the timber. It was cut with his consent by Runyon and Hobson under the contract with the Ironton Lumber Company and all that he can look to is any balance due Runyon and Hobson as above indicated.

In the absence of any evidence to the contrary the Ironton Lumber Company should be charged with the contract price for these logs, less the reasonable expenses of getting them to Catlettsburg, four cents per cube, for it is in its power to show what logs were lost or not received and what its expenses were. It claimed the logs as its own on the bank of the creek.

On the return of the case to the circuit court either party may take further evidence and the court will then settle the account of Runyon and Hobson with the Ironton Lumber Company. Judgment reversed and cause remanded for further proceedings consistent herewith.