HOUSTON & TEXAS CENTRAL RAILWAY COMPANY v. GEO. H. McFADDEN & BRO.

No. 581.—Decided November 8, 1897.

FT. WORTH & NEW ORLEANS RAILWAY COMPANY v. GEO. H. McFADDEN & BRO.

No. 582.—Decided November 8, 1897.

**1.  Practice in Supreme Court—Writ of Error.**

It is the practice of the Supreme Court where two parties to a judgment apply separately for writs of error to grant both, as matter of course, if either shows ground therefor.   (P. 202.)

**2.  Case Approved.**

The ruling of the Court of Civil Appeals in this case in affirming the judgment of plaintiffs against the Houston & Texas Central Railroad Company (40 S. W. Rep., 216) approved.   (P. 202.)

**3.  Railways—Partnership—Receiver—Lease.**

In a suit against two railway companies as partners it was found upon the trial that the line of one company was operated by the receiver of the other, who paid therefor a part of the gross receipts of its operation.   Held, that these facts did not establish a partnership relation between the two roads, but rather that of lessor and lessee.   (P. 203.)

ERROR to the Court of Civil Appeals for the Second District, in appeal from Tarrant County.

McFadden & Bro. sued the Houston & Texas Central Railroad Company and Fort Worth & New Orleans Railway Company and had judgment against the former only, which appealed, as did also the plaintiffs. The judgment against the appealing defendant was affirmed and that in favor of the appellee defendant was reversed and rendered for plaintiffs.   Each of the two defendant companies obtained writ of error. The suit was originally brought against the Houston & Texas Central "Railway" Company and Dillingham, its receiver, and the Fort Worth & New Orleans Railway Company.   It was subsequently dismissed as to Dillingham and by amendment made an action against the Houston & Texas Central "Railroad" Company, which last named defendant urged that the claim was barred before it was so made a party.   The trial court made the following findings of facts and of law which were adopted by the Court of Civil Appeals, except so much thereof as held the Fort Worth & New Orleans Railway Company not liable under the facts so found.

Conclusions of Fact.—1.   That the cotton for the value of which this

suit is brought was shipped from Fort Worth, Texas, consigned to W. G. Newby or assigns, on what is called a foreign bill of lading, and which was headed "Houston & Texas Central Railway Company," underneath which was "Charles Dillingham, Receiver," and recited that it "received in apparent good order, of Neil P. Anderson & Company, by the receiver of the Houston & Texas Central Railway Company, 100 bales of cotton, quality, contents and value unknown, being marked, consigned and destined as indicated below; through rate, $1.15 gold per hundred pounds, gross weight (subject to correction), 51,699 pounds, marks and numbers PFL." The bill of lading stipulated that the cotton was to be transported by the receiver of the Houston & Texas Central Railway Company, and connections as noted in the margin, to the port of Galveston, Texas, and to be there delivered, lightered, ferried or carted at owner's risk, to the steamship Mab, or some other steamship or steamship company, to be therein transported to the port of Bremen, Germany, and to be there delivered unto the order of Wm. G. Newby or assigns. The said bill of lading contained among other things the following clause: "With respect to the service until delivered at the port at Houston, it is agreed that no carrier or party in possession of all or any part of the property herein described shall be liable for any loss thereon or damage thereto, by causes beyond its control; or by floods, or by fire from any cause wheresoever occurring; or by riots, strikes, or stoppage of labor; or by leakage, breakage, chafing, loss in weight, changes in weather, heat, frost, wet or decay, or from any cause, if it be necessary or is usual to carry such property upon open cars." Said bill of lading was dated October 14th, 1892, and was signed by "S. W. Noble, severally but not jointly."

1a.   That said Dillingham, receiver, had a fixed and published rate for carrying cotton between Fort Worth, Texas, and Bremen, Germany, and the shipment in question was made according to said rate. Said Noble, agent at Fort Worth, Texas, was furnished by said receiver, with printed forms for bills of lading, uniform in their terms and conditions, and identical in their terms and conditions, with the bill of lading given to plaintiffs in this case, and he had no other or different form for bill of lading for shipment of cotton to Bremen, Germany, nor had he any authority to contract for shipment of cotton from Fort Worth to Bremen, Germany, except on bill of lading of the kind and with stipulations identical with the one given in this case. Nor would he have received said cotton and contracted to ship same through to Bremen, Germany, on any other terms without first asking for and receiving from the receiver authority to do so, if such authority would have been given, of which there was no proof offered. Said Noble, however, was authorized to and would have received said cotton for shipment to Houston, Texas, on its way toward Bremen, Germany, on ordinary bill of lading, which did not attempt to limit the liability of the receiver. The bill of lading given in this case was not objected to by the shipper, nor was any other or different kind of bill asked for.

2.   That at the time of the issuance of said bill of lading Charles Dillingham was operating the Houston & Texas Central Railway Company, which extends from Houston in a northerly direction to and beyond Garrett, in Ellis County, at which point it connects with another railroad known as the Central Texas & Northwestern; and this road extends from Garrett to Waxahachie, in Ellis County, and at that point it connects with the Fort Worth & New Orleans Railway, which extends from Waxahachie to Fort Worth.

3.   This line of railway from Fort Worth to Houston was operated as one property by the said Charles Dillingham under some arrangement, the character of which is not disclosed by the evidence.   It is shown that the Fort Worth & New Orleans Railway Company was not, at the time of this shipment, operating its road other than as it was being operated by the said Dillingham, and that it received from said Dillingham some part of the gross receipts of the operation of the line, but what this part was or how paid is not shown by the evidence, nor does the evidence show in what way the expenses of operating the several roads were paid, or by whom.

4.   The parties to this litigation have made and filed the following agreement for evidence, which I adopt as true, subject to the explanation hereinafter made:

"On the 26th day of May, 1886, the Circuit Court of the United States for the Eastern District of Texas, in cause No. 198, entitled Nelson S. Easton et al. v. The Houston & Texas Central Railway Company, appointed Nelson S. Easton, James Rintoul and Charles Dillingham receivers of all the railroad property and assets of said defendant company, and on the 4th of May, 1888, said United States Circuit Court rendered a final judgment in said cause foreclosing certain mortgages upon the property of said railway company.   Dillingham was directed and authorized by the decree to sell said property and franchises of said railway company, and that he should convey to the purchaser the property, and that the purchaser should possess and hold the same, together with all of the rights, privileges, immunities and franchises appertaining thereto, as fully and completely as said property, with all rights, privileges and franchises incident thereto, was then held and enjoyed by said Houston & Texas Central Railway Company, and as was held and enjoyed by said railway company at the time of the execution of said mortgages, subject only to the payment of such amounts of money as said court might decree, in any suit or suits of intervention filed in said cause, to be a charge on said property.   In pursuance of said decree Dillingham, on the 8th of September, 1888, sold said property to Frederick P. Olcott, and which said sale, upon due report being made thereof, was in all things ratified and confirmed by said United States Circuit Court on the 20th day of October, 1888, and said Dillingham was ordered to make a conveyance of said property in accordance with the terms and provisions of the decree of foreclosure, which he did on the 18th day of January, 1889, whereby he conveyed

to Olcott all and singular the roads, property, franchises and assets of said railway company, by him purchased at said sale.

"In August, 1889, Olcott, as was his right under the laws of the State of Texas, formed and created the railroad corporation, the Houston & Texas Central Railroad Company, the defendant herein, and on the first day of April, 1890, the said Olcott sold said railroad and its property and franchises to the said company. And said Dillingham, who was then the sole receiver in said matter of said railroad and its property, was directed by said United States Circuit Court to turn over said property to Olcott or his assigns, which was to be received by Olcott or his assigns charged with such liabilities as should be fixed and determined by said Circuit Court upon pleas of intervention filed in said court prior to the decree of foreclosure, and also such liabilities as might be determined by the court to have been incurred by said receiver or receivers, all claims therefor to be presented by intervention on or before October 1st, 1892. Said property was not turned over to Olcott or his assigns, but the said receiver retained the possession and control thereof until the 12th day of April, 1893, which was done by virtue of two certain restraining orders made and entered in said court on the 12th of December, 1893, and the 13th of March, 1893, in a case pending in said United States Circuit Court, entitled 'S. W. Cary et al. v. the Houston & Texas Central Railway Company.'

"On the 12th day of April, 1893, Dillingham, by an order of said court made, delivered to the defendant, the Houston & Texas Central Railway Company, the property purchased by said Olcott, and by him sold to said company."

The explanation as above referred to, is near the conclusion of said agreement, in giving the date of the two certain restraining orders as the 12th of December, 1893, there occurs a clerical error, it being intended for 12th of December, 1892; and just a line or two below, in giving the date when Dillingham, by order of court, delivered the property to the defendant railway company, the date is given as the 10th of April, when it was intended to read April 12th, 1893; and in the same connection, where the agreement says, "delivered to the defendant, the Houston & Texas Central Railway Company," it is meant, "delivered to the defendant, the Houston & Texas Central Railroad Company." The above were shown to the court to be clerical errors, and the agreement is adopted as true, with the above explanation.

5. That on the night of the 14th of October, 1892, fifty bales of the one hundred bales of cotton herein above mentioned were lost in a wreck which occurred at a point near Mud creek, on the Houston & Texas Central Railroad; that after the cars were wrecked the fifty bales of cotton above referred to were destroyed by fire.

6. That said cotton was the property of the plaintiffs, and was of the value when destroyed of $1809.43.

7. That the defendants failed to show that the destruction of said cotton by fire occurred without negligence on the part of said Dilling-

ham, receiver, and his employes in charge of the railway train on which the same was at the time of said wreck, that is, failed to show that they were free from negligence in the matter of said destruction of said cotton by fire, as aforesaid.

8. That after the conveyance by Dillingham, receiver, of the rights, privileges, franchises and the property of the Houston & Texas Central Railway Company to Olcott, on January 18th, 1889, as shown by the agreement of parties adopted by the court, above, the said Dillingham continued to operate said property as such receiver, and of the earnings of the same he paid over to said Olcott, and for the benefit of said Olcott, large sums of money, amounting to nearly a million dollars, and expended of said earnings in the permanent betterment of said railroad about a half million dollars. That after the conveyance of Olcott of said property, franchises, etc., to the defendant, the Houston & Texas Central Railroad Company, said Dillingham continuing still to operate said railroad, paid out, prior to October, 1892, to said Houston & Texas Central Railroad Company, and for its benefit, large sums of money, amounting to nearly a million more dollars, and, in addition, for the permanent betterment of said road during said time, over a million dollars more.

9. That at the time of the institution of this suit, on March 29th, 1893, Charles Dillingham, the same individual who was acting as receiver, above, was the president of the Houston & Texas Central Railroad Company, and that the three citations issued in said cause at said time were served on S. W. Noble, who sent all three of said citations to said Charles Dillingham.

10. That during the term of the receivership of the said Charles Dillingham, E. W. Cave was treasurer for said receiver, and that from the time of the organization of the Houston & Texas Central Railroad Company, in 1889, to the present time the said E. W. Cave has been treasurer of said company, and during the term of said receivership said Cave was nominally the treasurer of the old corporation, the Houston & Texas Central Railway Company.

11. That the Houston & Texas Central Railway Company, by the sale of its property, privileges, rights and franchises, as hereinabove set out, practically passed out of existence, save as to the litigation pending in the Federal Court in said receivership matter, and its existence became merged into the Houston & Texas Central Railroad Company upon its organization and acquiring said properties, rights and franchises, in 1889, and that said Houston & Texas Central Railroad Company was the owner of the railroad extending from Garrett to Houston in October, 1892, when the loss of the cotton occurred, and in March, 1893, when the original petition in this cause was filed, and that Charles Dillingham was at said time practically operating said road in behalf and for the benefit of said Houston & Texas Central Railroad Company, and that said defendant, the Houston & Texas Central Railroad Company, was in fact the corporation sued by the plaintiffs in

their original petition under the name of the Houston & Texas Central Railway Company.

12. That plaintiffs, at the time of the loss of said cotton, and ever since until now, have resided in Philadelphia, Pennsylvania, and neither they nor their counsel were aware of the change in the name of said corporation from "Railway" to "Railroad" Company until about the time of the filing of their amended petition, on April 12th, 1895.

13. That to enable the Appellate Court to properly understand and pass upon the question of limitation, plead by the defendant, the Houston & Texas Central Railroad Company, I deem it proper that all the pleadings filed in this cause appear in the transcript.

From the above facts I make the following conclusions of law:

1. I find that there is no sufficient proof of joint liability or partnership between the Fort Worth and New Orleans Railway Company and the other defendants to hold said company responsible for any loss occurring beyond the terminus of its own line, and that as said loss of the cotton did not take place on its line of railway, it is not responsible therefor, and should go hence without day and recover its costs of the plaintiff.

2. That the Houston & Texas Central Railway Company, as distinct from the Houston & Texas Central Railroad Company, is not and has never been in fact a proper party to this suit, but that plaintiffs by reason of their mistake in naming the said defendant as a party should be taxed with any costs created thereby.

3. That the plaintiff's cause of action against the Houston & Texas Central Railroad Company is not barred by the statute of limitations.

4. That the provisions in the bill of lading exempting the carrier from liability for loss by fire is a valid stipulation, except as against loss resulting from the negligence of the carrier, the circumstances under which said bill of lading was given did not vitiate the same, but that said Houston & Texas Central Railroad Company having failed to show that the said loss by fire was not occasioned by its negligence, or the negligence of the receiver in charge of its property, such stipulation cannot avail it as a defense herein.

5. That the said Houston & Texas Central Railroad Company having received the benefit of large sums of money paid it by the receiver, through the operation of said road by him, and of large betterments made by said receiver during said receivership, out of the earnings of said road, became and is liable to the plaintiffs for the loss of said cotton, and plaintiffs are entitled to judgment against it (said receiver having been heretofore dismissed upon pleading his discharge) for the value of said cotton as hereinabove found, and legal interest from the date of said loss, as hereinabove found.

The opinion of the Court of Civil Appeals, so far as it relates to the liability of the Houston & Texas Central Railroad Company, was as follows:

TARLETON, CHIEF JUSTICE.—We adopt the conclusions of fact filed by His Honor, contained in the record on pages 197 et seq. We also adopt the conclusions of law filed by him on all questions in issue between the appellees, George H. McFadden & Bros., and the Houston & Texas Central Railroad Company. This course dispenses with an extended discussion of the questions presented.

We deem it proper, upon the defense of limitation included within these issues, merely to remark that it rests upon the alleged difference in the corporation known as the Houston & Texas Central Railway Company and that known as the Houston & Texas Central Railroad Company. We concur fully with the learned judge who tried this case in holding that the relation between the two corporations thus designated is one of substantial identity; that at the time of the institution of this suit the Houston & Texas Central Railroad Company was, in truth, sued under the name of the Houston & Texas Central Railway Company, under which it permitted its property and its franchises and the line of its railway to be operated; indeed, that the name Houston & Texas Central Railway Company was but a cover for the corporation of which the proper name was the Houston & Texas Central Railroad Company; that the corporation was the same, whether known by the name of the Houston & Texas Central Railroad Company or by that of the Houston & Texas Central Railway Company.

The shadowy character of the corporate difference insisted upon as a result of the difference in name adverted to is emphasized by this record, in the fact that while the appeal bond is executed by the Houston & Texas Central Railroad Company, the assignments of error, and the only assignments of error questioning the action of the court in rendering judgment against that company, are signed by counsel as attorneys for the Houston & Texas Central Railway Company. So that, if in fact the technical distinction should be observed by us, it is very questionable whether there are any assignments of error by the Houston & Texas Central Railroad Company entitled to consideration as a basis for complaint of the action of the court upon the issues presented by the record between that company and the appellees, McFadden Bros.

*Stanley, Spoonts & Thompson*, for plaintiff in error, the Houston & Texas Central Railroad Company, assigned the following errors: "The Court of Civil Appeals erred in adopting the second conclusion of law of the trial court, holding that the Houston & Texas Central Railway Company, as distinct from the Houston & Texas Central Railroad Company, had never been a proper or actual party to the suit, and also in adopting the eleventh conclusion of law filed by the trial court, wherein said trial court held that the Houston & Texas Central Railway Company became merged into the Houston & Texas Central Railroad Company upon its organization and securing of the franchises of the Houston & Texas Central Railway Company.

"The Court of Civil Appeals erred in affirming the judgment as to

the Houston & Texas Central Railroad Company, because the conclusions of law and fact filed by the trial court did not justify the judgment rendered in the trial court, and affirmed by the Court of Civil Appeals, because: First, no liability could be fastened on said company except upon allegation and proof that the Houston & Texas Central Railroad Company received the benefit of the earnings of said property after it became the purchaser thereof, either by cash turned over to it or betterments made in its interest after it became the owner of the property; and second, there was absolutely no proof that any improvements were made out of the earnings of the road subsequent to the sale to Olcott, nor was there any conclusion of the court to that effect.

"The Court of Civil Appeals erred in holding that the plaintiffs' cause of action as against the Houston & Texas Central Railroad Company was not barred by limitation at the time said company was first made a party to this suit.

"The Court of Civil Appeals erred in not sustaining appellant's thirteenth assignment of error, which was as follows: 'The court erred in not rendering judgment in behalf of defendant, the Houston & Texas Central Railroad Company, because it was shown on the trial that the Houston & Texas Central Railway Company's property was in the hands of a receiver, and sold out by the receiver to one Olcott, and that said Olcott transferred said property to the Houston & Texas Central Railroad Company, and that under the order by virtue of which the property was sold at the receiver's sale the same was sold free of all claims arising against the receiver, which should not be established in the Federal Court within six months from the date of said sale; and the proof further showed that plaintiffs did not intervene in said Federal Court, nor in any wise establish their said claim in said court, as provided in the order of said court; and plaintiff's cause of action having arisen against the receiver, the defendant as a purchaser of said property under said Olcott is not responsible to plaintiffs on their said claim.' "

*Stanley, Spoonts & Thompson,* for plaintiff in error, Fort Worth & New Orleans Railway Company, assigned error as follows:

"The Court of Civil Appeals erred in reversing the judgment of the trial court, and rendering judgment against the Fort Worth & New Orleans Railway Company, because there was no fact found by the court below, nor by the Court of Civil Appeals, showing that the Fort Worth & New Orleans Railway Company, defendant in the court below, was in any wise responsible for the destruction of said cotton, as the same did not occur upon its line of railway, but upon a line of railway in which it had no interest, and over which it had no control.

"The Court of Civil Appeals erred in overruling the first conclusion of law filed by the trial court, to the effect that there was no sufficient proof of joint liability or partnership between the Fort Worth & New Orleans Railway Company and the Houston & Texas Central Railway Company, to hold the Fort Worth & New Orleans Railway Com-

pany liable for loss occurring beyond the terminus of its own line, and that the loss in this case did not occur on its line, and it therefore was not responsible for said loss.

"The Court of Civil Appeals erred in rendering judgment against the Fort Worth & New Orleans Railway Company, because there was no conclusion of fact found by the court below nor adopted by said Court of Civil Appeals and made the basis of the opinion, that justified the rendition of any judgment against said Fort Worth & New Orleans Railway Company." Railway v. Johnson, 37 S. W. Rep., 243; Ins. Co. v. Railway, 104 U. S., 146; Railway v. Neel, 19 S. W. Rep., 963.

*A. M. Carter*, for defendants in error.—The trial court erred in not holding the Fort Worth & New Orleans Railway Company liable for the loss, and in not rendering judgment against it for the entire amount thereof, and in not holding that the said Fort Worth & New Orleans Railway Company was a co-partner with the Houston & Texas Central Railroad Company, and if not, that it was being operated in connection with said railroad under one management and upon a division of the gross receipts thereof, and was therefore liable for said loss. Hutchinson, Carriers, secs. 159, 170.

GAINES, CHIEF JUSTICE.—These two writs of error were granted to the same judgment. The case as made in the Court of Civil Appeals is very fully reported in 40 Southwestern Reporter, page 216; and we refer to that report for a statement of the proceedings had in the cause.

When we acted upon the two applications, we were of opinion that the Court of Civil Appeals erred in reversing the judgment of the District Court in favor of the Fort Worth & New Orleans Railway Company and in rendering judgment against it, and we therefore granted the writ as to that applicant. We were also of the opinion, that there was no error in the judgment against the Houston & Texas Central Railroad Company. But it is the practice of this court, whenever two applications are made in the same case and one is granted, to grant the other as a matter of course; hence we granted the application of the latter company. However, since the submission of the case we have reviewed the assignments presented on its behalf with the result that we see no reason to change our first opinion. We think the conclusions of the trial court and of the Court of Civil Appeals upon the case of that company correct.

The cotton, for the loss of which the suit was brought, was to be shipped from Ft. Worth to Houston over the Fort Worth & New Orleans Railway and over the Houston & Texas Central Railway, and thence to Galveston, to be delivered to a steamer for transportation to Germany,—one Dillingham as receiver of the Houston & Texas Central Railway Company, acting through a local agent, executing the bill of lading. The Fort Worth & New Orleans Railway Company did not appear as a party to the contract upon the face of the bill. The cotton

was destroyed by fire on the line of the Houston & Texas Central Company. The plaintiffs in the trial court claimed that the defendant companies were jointly liable as partners; but that court held that the facts proved were not sufficient to establish the partnership and gave judgment for the Fort Worth & New Orleans Company. It was upon this point the Court of Civil Appeals held that the trial court was in error, and reversed and rendered the judgment against that company.

The third paragraph of the findings of fact by the trial judge reads as follows: "This line of railway from Fort Worth to Houston was operated as one property by the said Charles Dillingham under some arrangement, the character of which is not disclosed by the evidence. It is shown that the Fort Worth & New Orleans Railway Company was not, at the time of this shipment, operating its road other than as it was being operated by the said Dillingham, and that it received from said Dillingham some part of the gross receipts of the operation of the line, but what this part was, or how paid, is not shown by the evidence, nor does the evidence show in what way the expenses of operating the several roads were paid, or by whom." It was upon the facts as found that the learned judge predicated his conclusion that the partnership was not proved. It was upon the same facts that the Court of Civil Appeals reached a contrary result.

Do the facts that Dillingham as receiver of the Houston & Texas Central Railway Company was operating both roads jointly and that a portion of the gross receipts was paid to the Fort Worth & New Orleans Company established a partnership either between the parties or as to third persons? We think not. While the relations of the receiver to the Fort Worth & New Orleans Company are obscure, the facts found would indicate that the arrangement between the parties was that Dillingham was to have the use of the Company's road and that he was to pay for such use a portion of the gross proceeds of the traffic. This would constitute the relation of lessor and lessee and not that of partners. If such a lease were authorized by statute, the lessor would not be responsible for the acts of the lessee in operating the line. If without authority of law, then the purported lease would not have protected the company from liability for any wrong which may have accrued from the operation of its own road. But in neither case could the parties to the arrangement be treated and held responsible as partners. The mere participation of two persons in the gross receipts of an enterprise in which their capital, skill and labor may be combined cannot of itself make them partners. To constitute a partnership the parties in the business or transaction must be entitled to share in the net profits. It is not sufficient that they participate in the "gross profits," as they are sometimes called. Beecher v. Bush, 45 Mich., 188; see also Buzard v. Bank, 67 Texas, 89. A partnership may exist in which the partners agree to divide the gross receipts, but that circumstance alone does not establish the relation. A partnership may have existed in this case,

but the relation does not follow as a legal result from the facts found by the trial court.

If the Fort Worth & New Orleans Company was not in fact a partner it cannot be held to be such as to third persons, in the absence of some proof that it permitted itself to be held out as such.

We conclude that the judgment of the Court of Civil Appeals in so far as it reverses the judgment of the District Court ought to be reversed; and that the judgment of the District Court should be in all things affirmed. And it is so ordered.

*Judgment of Court of Civil Appeals in part affirmed and reversed in part.*

*Judgment of District Court Affirmed.*