**McDANIEL v. STATE FAIR OF TEXAS.***
(No. 9645.)

(Court of Civil Appeals of Texas. Dallas. May 22, 1926. Rehearing Denied July 3, 1926.)

**1. Joint adventures ⬡1.**

Contract by state fair of Texas with another for presenting pageant at his own ex-pense for percentage of gate receipts *held* not to constitute joint adventure that would render fair liable to third parties on debts incurred by such other party.

**2. Words and phrases.**

"Profit," used in financial sense, is difference between cost of article to vendor and price paid by vendee, and, as to a commercial enterprise, difference between cost of stock and operating expenses and total receipts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Profit.]

**3. Joint adventures ⬡1.**

"Joint adventure" is but another name for "special partnership" to which corporation is party.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Special Partnership; First and Second Series, Joint Adventure.]

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by W. A. McDaniel against the State Fair of Texas. Judgment for defendant, and plaintiff appeals. Affirmed.

Etheridge, McCormick & Bromberg, of Dallas, for appellant.

Thompson, Knight, Baker & Harris and Alex F. Weisberg, all of Dallas, for appellee.

VAUGHAN, J. In the trial court appellant by his cause of action sought to hold appellee liable for certain merchandise sold and services rendered to one Jack Webster Harkrider, the basis of the action being the following written contract:

"This contract, made and entered into this 5th day of August, A. D. 1921, by and between the state fair of Texas, hereinafter known as party of the first part, and Jack Webster Harkrider, of Fort Worth, Tex., hereinafter known as party of the second part, witnesseth:

"That for and in consideration of the conditions hereinafter stated, party of the second part hereby agrees to produce and stage in the stadium at Fair Park on the night of October 8, 1921, a historical pageant, typifying the Centennial of the first settlement of Texas and the subsequent periods of the progress and development of the state.

"2. Said pageant is to be produced and staged at the entire expense of party of the second part, and is to be thoroughly high class and elaborate in every respect; the entire theme and all plans to be subject to the approval of the party of the first part.

"3. The party of the first part is to furnish the use of the stadium, all tickets, ticket sellers, ushers, and police protection, and devote a reasonable amount of the 'fair' space in newspapers to the publicity and advertising of said pageant. All other special advertising in the form of bulletins, pamphlets, etc., is to be furnished and distributed by party of the second part solely at his expense. The party of the second part is to furnish ticket takers.

"4. It is further agreed that all ground privileges or concessions such as the sale of pro-

---

grams, cold drinks, cushions, etc., shall be held by the party of the first part.

"5. It is also agreed that party of the second part shall have —— complimentary reserve tickets, which may be distributed by him as he may see fit.

"6. It is agreed that 120 reserve box seats shall be at the disposal of the party of the first part, and with these tickets the officers and directors of the state fair of Texas, the mayor and city commissioners, and the park board of the city of Dallas, Tex., are to be extended courtesies, and no other complimentary tickets are to be allowed to party of the first part.

"7. It is also agreed that passes issued to the press by party of the second part will admit the holder to the gate, and that the party of the second part is to look after and issue tickets to the press.

"8. It is further agreed that the party of the first part shall look after collection and handling of all moneys from the sale of tickets, subject, however, to the inspection of all details by party of the second part.

"9. It is further agreed that seventy-five (75%) per cent. of the gross receipts from admissions shall be given to party of the second part, and that twenty-five (25%) per cent. of the gross receipts shall be given to party of the first part.

"10. It is further agreed that the price of admission to the pageant shall be mutually agreed upon between parties of the first and second part.

"11. Settlement under this contract shall be made on the morning of October 9, A. D. 1921, and as soon as it is possible to check and audit all receipts.

"12. It is further specifically understood and agreed that this contract is contingent upon fires, accidents, or any other causes beyond the control of either party, whereby the fulfillment of this contract may be made impossible, and in such event there shall be no liability or claim for damages whatsoever by either party.

"13. It is also agreed and specifically made a part of the conditions above named that the said party of the first part shall not be held responsible for any salaries or expenses of any employee or employees of the said party of the second part in the fulfillment of this contract, nor for accident or damage to or by any article or person belonging to or employed by party of the second part, while on the grounds of the party of the first part in preparation therefor or removal therefrom.

"14. In granting this concession to party of the second part by party of the first part, it is understood and specifically agreed that the pageant to be staged or produced by party of the second part shall be of the very highest class and type in every particular, thoroughly typifying all memorable and historical data, from the first settlement of Texas down to the present date.

"In testimony whereof, witness our hands and seals in duplicate, this the 5th day of August, A. D. 1921. [Signed] State Fair of Texas, by W. H. Stratton, Sec'y, Party of the First Part. [Signed] Jack Webster Harkrider, Party of the Second Part."

Appellant alleged the liability of appellee to be that of a "joint adventurer" with said Harkrider, the liability sought to be enforced being claimed to have issued out of the making and performance of the terms of said contract by the parties thereto.

Appellant alleged that by the execution of said contract in writing appellee and said Harkrider associated themselves together as joint adventurers in the production of a theatrical spectacle known as the Texas Centennial Pageant; that appellee contributed to the enterprise the use of its exhibition grounds, its stadium, tickets of admission, ticket sellers, ushers, police protection, and certain advertising and other services, while Harkrider contributed his services and skill as managing director and producer; and that, on October 8, 1921, said pageant was produced by appellee and Harkrider; that thereafter the proceeds or revenue realized from the sale of tickets was divided between said parties in accordance with said contract; that by reason of its participation in said joint adventure, appellee was indebted to appellant in the sum of $19,702.95 with legal interest from January 1, 1922, on account of (a) the contract in writing wherein appellee and Harkrider, acting through said Harkrider, jointly and severally, promised to pay appellant the sum of $3,000 for furnishing a 60-piece orchestra for said pageant, which contract had been by him performed; (b) an implied contract whereby appellee and Harkrider jointly and severally bound themselves to pay appellant the sum of $240, said sum being the reasonable value of extras furnished and provided by appellant at the special instance and request of appellee and Harkrider, acting through the latter; (c) 36 other claims which had theretofore been assigned to appellant for a valuable consideration by the owners thereof, aggregating the sum of $16,462.95, for merchandise sold and services furnished and provided for use in said pageant by divers persons, firms, and corporations, and for which appellee and Hardrider, acting through said Harkrider, jointly and severally bound themselves to pay. Appellant alleged that Harkrider was a nonresident, wholly insolvent, and prayed for judgment against appellee for the aggregate sum of $19,702.95.

As to appellee's answer, it is only necessary to state that same included a general denial, special answer denying under oath that it was ever associated with said Harkrider as a partner or joint adventurer in any of the matters and things alleged by appellant, and denying that any of the contracts alleged by appellant were entered into by it or by any one on its behalf, by or with its knowledge, consent, or authority; that appellant and each of his assignors know and were informed that said bills were incurred by Harkrider solely on his own responsibility; and that same would not constitute bills or claims against appellee.

On the 27th day of March, 1925, the jury

returned a verdict in favor of appellee under peremptory instructions of the court, on which verdict the judgment appealed from was rendered denying appellant the right of recovery. It is not claimed that appellant or any of his assignors looked to the credit of appellee in furnishing merchandise or services to Harkrider, or that appellee in any way held out or authorized Harkrider as its agent to purchase the goods and secure the services for value of which appellant sues, or that Harkrider in any manner, or on a single occasion, pretended to be contracting for appellee. The only evidence introduced with reference to the contract or sought to be elicited by either party to the suit is to the effect that the contract was carried out and performed exactly as written, and there is no dispute in the evidence about that. We find that the terms and provisions of said contract obligatory on the parties thereto were by them respectively kept and performed; that Harkrider entered into a written contract with appellant under which appellant agreed to furnish, and did furnish, a 60-piece orchestra for five rehearsals and one night performance on October 8, 1921, for an agreed price of $3,000; that the orchestra played at the pageant; and that, in addition thereto, appellant and his musicians, by arrangement with Harkrider, worked overtime, and that he put on three extra people; that the reasonable value of such extra service is the sum of $240; and that appellant had never been paid any part of either of said sums; that the 36 assigned claims declared on by appellant were proved by the introduction in evidence of the original assignments; that these claims, aggregating $16,462.95, were assigned to the appellant by various persons, firms, and corporations, and were for goods, wares, and merchandise sold to and services rendered by such persons, firms, and corporations to said Harkrider and used in the production of the pageant; that said assignments were made to appellant upon the conditions named therein; and that each of said claims of said respective assignors is reasonable and fair; that said 36 assignments were each in the following form:

"For a valuable consideration paid by W. A. McDaniel, the receipt of which is hereby acknowledged and the covenants hereof, the undersigned hereby assigns to W. A. McDaniel their claim against Jack Webster Harkrider and his associates in connection with Texas Centennial Pageant, held at Stadium Fair Park on October 8, 1921, said claim amounting to $——, with legal interest thereon from October 8, 1921.

"It is understood that the said W. A. McDaniel will, at his own expense, pay all expenses of collection and court costs and attorney's fees, and will pay to the undersigned 50 per cent. of whatever may be collected by him through suit, compromise, or otherwise on this within ten days after such collection is made, provided that said W. A. McDaniel shall not compromise the claim for less than 50 cents on the dollar of the amount due thereon.

"This assignment is coupled with an interest, and is not revokable."

It was agreed that each of the parties who assigned claims to appellant would, if present in person in the court below, have testified as follows:

"That he made assignment to the plaintiff, W. A. McDaniel, of his claim against one Jack Webster Harkrider, no money compensation being paid therefor, and upon the conditions named in such assignment. That such claim was for services rendered or goods delivered to the said Harkrider and were used by him in constructing and producing a show which he called the Texas Centennial Pageant, staged by him in the stadium in the grounds of the state fair of Texas on October 8, 1921. That said Harkrider has been discharged in bankruptcy, and that said claim, sworn to as being owed by Jack Webster Harkrider individually, was filed with the trustee in bankruptcy of the said Jack Webster Harkrider as a general claim against his estate and was allowed as such, and that no part of same has ever been paid. * * *"

Soon after October 8, 1921, Harkrider was adjudicated a bankrupt.

The principal question—in fact, the only question of any moment in the case—is, whether appellee, on account of having made said contract with Harkrider, is liable for the debts incurred by Harkrider? It is not claimed by appellant that either the relationship of general agency or that of partnership was created by the execution and performance of the contract made and entered into by appellee and Harkrider, the appellant's contention being that by the execution and performance of said instrument said parties became joint adventurers in the enterprise of staging said pageant. All transactions for the purchase of material and the performance of labor on account of and for said pageant were had solely with and for Harkrider and at his request. Harkrider did not assume to be acting in such transactions for appellee, or pretend that he was in fact its agent, or that appellee in any manner, directly or indirectly, held Harkrider out as its agent. Appellee did not exercise any authority or control over the purchases made by Harkrider or in the hiring of the employees by him.

The determination of this appeal must rest exclusively on the actual relationship created between appellee and Harkrider by the provisions of their contract, which was carried out precisely as written, without any changes, modifications, or departures. Therefore the contract is the case, and it is really only necessary, in order to dispose of this appeal, to ascertain and declare the legal effect of that instrument.

[1] To reach the proper solution of the issue presented by appellant's contention as

to the legal effect of said contract, it is not necessary to analyze and discuss its every term, but only to examine its provisions to ascertain whether or not it contains the essentials necessary to create the relationship and liability thereunder contended for by appellant, to wit, whether or not there is present in the contract the essentials necessary to constitute a limited partnership, for, as we view the law, a "joint adventure" which would create a liability to third parties on account of the relationship existing between the parties thus jointly interested is no more than a limited partnership, the only difference being that under the same environments the relationship, if between individuals, would be properly designated a limited partnership, while, on the other hand, where one of the parties happened to be a corporation, the appellation would be changed from that of a limited partnership to a joint adventure. The contract is barren of any provision that makes the parties thereto jointly interested in providing the expense for the enterprise or to share in the profits thereof. There is no joint liability on the part of the parties to the contract for the expenses incurred by either of the parties in the performance of his or its part of the contract. Every necessary precaution was observed in the preparation of the contract to show that it was only the granting of a concession by appellee to Harkrider, which involved on the part of appellee the use of its exhibit grounds and stadium and the furnishing of certain services in connection with the performance to be produced and given by Harkrider, the payment of the charge for such concession to be determined by the amount of gross receipts— appellee's portion thereof to be 25 per cent. and that of Harkrider 75 per cent. Further, that the entire expense of producing and staging the pageant should be borne by Harkrider, and that appellee should not be held responsible for any salaries or expenses of any employee or employees of Harkrider in the fulfillment of the contract. It is apparent that the right of supervision or management reserved by appellee as to amount to be charged for admission, the sale of tickets, collection of money for tickets sold, the handling of the money, was undoubtedly for the benefit of appellee, as being the means of securing the prompt and full payment of its charge for the concession granted, which was but the means selected for fixing the amount of compensation to be paid for the use of its property and the means of making prompt and full collection thereof.

It is enough to say that the contract is absolutely wanting in two essential features, without the existence of which neither a special nor a general partnership could be created, to wit, a community of interest in the profits and liability for losses.

[2] In presenting the case on the part of appellant the terms "gross profits" and "net profits" are used. While we understand this is almost a general custom, yet, it occurs to us that the words "net" and "gross," when used in connection with the word "profit," are not of any real import, as the word profit, when used in a financial sense, means the difference between the cost of an article to the vendor and the price paid by the vendee, and, as to a commercial enterprise, the difference between the combined cost of the stock of merchandise and all operating expenses and the total receipts of said business —the difference where there is a gain over the investment representing the profits of the business and, where the returns are less than the investment, a loss to the business. However, the terms of the contract fixing the rights of the parties thereto, in so far as providing for a division of the receipts from admissions to the pageant, the word "profit" is not used, but, to the contrary, its general context repels the idea that a division of profits was even within the contemplation of the parties, in that there was to be a community of interest in the profits or losses.

We think it would be a useless task to take up each provision of the contract and present a discussion of same in an analytical manner to show that the conclusion reached in reference to the legal effect of the contract is correct.

Looking to the situation of the parties, the purpose to be accomplished by the contract, the rights of the parties recognized and apportioned thereby, the burdens imposed respectively upon the parties, we find that appellee was engaged in the service common to the business of conducting a fair where concessions constitute the principal source of revenue, without becoming responsible for or interested in the production of the performance to be given or the conduct of any other business authorized by the concession granted, further than to preserve its reputation, the integrity of its business, and to furnish its patrons, among other things, with attractive, educational, and pleasing entertainments, and collect its charges for concessions granted.

On the other hand, Harkrider, at his own expense, was to produce and stage the pageant as provided for in his contract with appellee, appellee to have no part in the production or staging of the pageant, and Harkrider having no voice in the conduct and management of the business authorized to be conducted by appellee under its charter powers as a fair association, Harkrider's only connection therewith being the rights secured to him by the concession under which he was to stage the pageant, for which he was to pay a compensation fixed definitely by the terms and provisions of section 9 of the contract.

From this it must be apparent that it was

not the express or implied intention of the parties to the contract to create any other relationship than that of lessor and lessee, as the contract by its terms only created a tenancy, although short in duration. It is not the length of the term of the lease, but the fact that such an estate has been created that determines the attitude and the rights of the parties under a contract granting the right to use property of another. We think the following language of the contract justifies this conclusion:

"That for and in consideration of the conditions hereinafter stated, party of the second part hereby agrees to produce and stage in the stadium at Fair Park, on the night of October 8, 1921, a historical pageant. * * * The party of the first part is to furnish the use of the stadium, all tickets, ticket sellers, ushers, etc., * * * that 75 per cent. of the gross receipts from admissions shall be given to party of the second part, and that 25 per cent. of the gross receipts shall be given to party of the first part."

[3] But it is insisted by appellant that because the parties to the contract were to, independent of one another, furnish certain specified property and assistance in carrying out the terms and provisions of the contract assumed by them respectively, and although at their own separate expense, the fact that they were to share in the receipts created a joint adventure between the parties to the contract. To this we cannot assent, same being contrary to what we understand to be the proper rule of interpretation applicable to such state of facts, in this: Just as the same elements of partnership must exist in a special partnership as in a general partnership, so the same elements of a special partnership must exist in an undertaking so as to be denominated a "joint adventure," as that expression is used where liability for debts is involved; the only distinguishing feature between the two partnerships being that a special partnership is confined to one transaction, while a general partnership embraces a continuing business. Therefore the expression, "joint adventure," is but another name for a special partnership to which a corporation is a party as a joint adventurer and held liable as such if the adventure be within the general scope of the corporate business.

In the case before us, as above stated, there is no community of interest either in the losses or profits of the business or the expense thereof, the undertaking not being a joint enterprise in the sense that both parties were interested in the production and staging of the pageant further than that appellee, the owner of the stadium, leased the use thereof for a certain specified time to Harkrider for the purpose of staging his production, for which use he contracted to pay to appellee, as rent, 25 per cent. of the receipts from admissions. The following authorities have been followed by us in reaching the conclusion herein announced: Beecher v. Bush, 45 Mich. 188, 7 N. W. 785, 40 Am. Rep. 465; Boreing v. Wilson, 128 Ky. 570, 108 S. W. 914; Ohio Valley Tie Co. v. Hayes, 180 Ky. 469, 203 S. W. 193; Buzard v. Bank of Greenville, 67 Tex. 84, 2 S. W. 54, 60 Am. Rep. 7; H. & T. C. Ry. Co. v. McFadden & Bros., 91 Tex. 203, 40 S. W. 216, 42 S. W. 593; McDonough & Earnshaw v. Bullock, 2 Pearson (Pa.) 191. From the last-cited case we make the following quotation as being applicable to the instant case, both on facts and question decided:

"Throughout the whole article there is no mention of a partnership; no intimation that there is to be a community of goods, or any share in the profits and losses. Each has his own distinct proportion of the expense; the gross receipts to be divided, and each of the two parties pay out for themselves. One may gain, the other lose. There is no joint interest or joint labor. As a general rule there must be a community of interest and participation in the profits. A host of authorities might be cited to establish these principles; and the same doctrine is laid down by the best writers on the subject. There was clearly no partnership in the present case, none created in words, none existed in the character of the business, none intended by the parties, as we may judge from the language of the article."

See Parker v. Fergus, 43 Ill. 437; Thomas v. Springer, 134 App. Div. 640, 119 N. Y. S. 460; Austin v. Neil et al., 62 N. J. Law, 462, 41 A. 834; Fink et al. v. Brown (Tex. Com. App.) 215 S. W. 846.

The trial court having disposed of the case agreeably to the rules of law applicable to cases of this character, its judgment is in all things affirmed.

Affirmed.

## On Appellant's Motion for Additional Findings of Fact.

In response to the above motion, we find the following additional facts: (a) That Jack Webster Harkrider was a resident of Fort Worth, Tex., and a stranger to the city of Dallas prior to entering into the contract with appellee; (b) that the pageant was a high-class social affair, participated in by some 3,000 of the prominent people of Dallas.