## WHATLEY v. CATO OIL CO., Inc., et al.

No. 4878.

Court of Civil Appeals of Texas. Amarillo.

March 28, 1938.

Ray Bland and Kilgore & Rogers, all of Wichita Falls, for appellant.

W. E. Fitzgerald, Bert King, and Harold Jones, all of Wichita Falls, for appellees.

JACKSON, Chief Justice.

Dan E. Whatley instituted this suit in the district court of Jack county against the defendants, the Cato Oil Company, Inc., A. L. Cato, J. A. Cato, Virgil Cato, Calla S. Wasley, and James H. Wasley, to recover an undivided one-fourth interest in a certain leasehold estate and for an accounting of the business of a joint adventure he asserts he was engaged in with the defendants.

He alleged that, on all the dates material to the controversy, A. L. Cato was the president of the defendant corporation who, with Virgil Cato and Calla S. Wasley, were stockholders of said corporation, through which all the defendants transacted their oil business; that J. A. Cato was the acting agent for the corporation and James H. Wasley was the husband of Calla S. Wasley, the sister of the Catos.

Plaintiff says on June 17, 1936, he entered into a written contract with J. A. Raley and his wife under which they placed in escrow with the First State Bank of Bryson two oil leases covering tracts containing 134 and 65 acres of land, respectively; that the Raleys agreed if within 90 days he should commence a well on the land and pay them $1,000 in cash on the date such well was spudded in the leases should be delivered to him and the balance of the consideration for said acreage, $5,350, should be paid out of one-eighth of seven-eighths of the oil produced and sold from the leased premises. He had, he alleges, at his own expense obtained geological information relative to the Raley leases and the lands adjacent thereto, and, with this information and his contract, he approached A. L. and J. A. Cato and disclosed to them such information and his contract with the Raleys and that: "Thereafter on or about the 9th day of September, 1936, plaintiff and the defendant Cato Oil Co., Inc. * * * acting through A. L. Cato, its president, entered into a written contract by the terms of 'which said corporate defendant and plaintiff entered upon the joint adventure of drilling a well on said Raley land and developing said Raley land for oil and gas; * * * that as was provided in such contract between plaintiff and said corporate defendant, said corporate defendant became the operating joint adventurer charged with the duty and obligation in good faith of managing all operations under such joint adventure for the joint benefit of itself and this plaintiff and with due diligence to use all information belonging to or subsequently acquired by such operations for the mutual benefit of the members of said joint adventure."

That at the time the contract was made the plaintiff informed the agents of the corporate defendant that the geological information he had indicated that the Bryson land had under it the same prospective oil pool as the Raley land and discussed with

them the advisability of acquiring a lease upon the Bryson land, and such was within the contemplation of the parties when the contract was made.

That the well on the Raley land was spudded in, the leases thereto were delivered, and a partial performance of the contract resulted in the defendant corporation acquiring an undivided three-fourths interest and the plaintiff an undivided one-fourth interest in the Raley leases. That at the time the sand was reached in the Raley well it gave evidence of becoming a large producer and J. A. Cato at that time on the derrick floor of the well told the plaintiff and A. L. Cato that it would 'be to their mutual advantage to keep that information quiet and use it for their mutual profit in acquiring additional leases on adjoining land. That he acquiesced in this arrangement and depended on the managing corporate defendant to acquire additional leases and particularly a lease on the Bryson land for the mutual advantage of the joint adventurers, and did nothing himself toward acquiring any additional leases for the protection of himself or his coadventurers.

That on September 23, 1936, A. L. Cato entered into a contract with the owner for the acquisition in his own name of a lease on the Bryson land; that in acquiring this lease the only consideration paid was from the proceeds of the joint enterprise; that A. L. Cato is holding such lease for the benefit of himself and the other stockholders in said corporation; has repudiated the rights of the plaintiff therein, and by concealing his acts has sought to defraud the plaintiff of his undivided one-fourth interest in the Bryson lease. The plaintiff copies the contract of September 23d in his petition, which, in so far as affects this appeal, reads as follows:

"This confirms our conversation relative to the well you are drilling on the J. A. Raley lease in Jack County, which lies east and adjoining 75 acres I own on the Mary Bryson lands.

"In consideration of your drilling the well on the Raley lease I will execute a lease to you covering the 75 acres of the Bryson land on the following conditions:

"If you get a well on the Raley lease with initial production of 50 barrels or more I will execute a lease to you covering the 75 acres of the Bryson land subject to $75.00 per barrel based on initial potential production of the Raley well you are now drilling, payable out of one-fourth of seven-eighths of the production and subject to the following drilling obligations: * * * That you will spud in a well on my 75 acres on or prior to December 1, 1936 * * * and in no event will I execute an assignment of the lease until you have spudded a well on my 75 acre tract and any assignment I make shall be subject to the conditions herein contained."

This contract was consummated according to the allegations of the petition for and in consideration of the performance of the contract between appellant and appellees by the execution and delivery of a lease to the Bryson land, which was recorded about December 11, 1936, in Jack county. Plaintiff alleges that he did not know of said contract until after the institution of this suit, but was led to believe the contract for the Bryson land was made pursuant to the conversation and representations of J. A. Cato at the time the oil sand in the Raley well was reached. That, so believing, he talked with the president and agent of the defendant corporation on numerous occasions requesting that he be given an assignment of his undivided one-fourth interest in the Bryson lease, and just learned shortly prior to the institution of this suit that the defendants had unequivocally repudiated his rights in the Bryson lease.

The plaintiff says that in furtherance of the joint enterprise he has expended individual funds in paying the obligations of the joint enterprise, and that defendants have likewise made similar expenditures; that he has at all times been ready, able, and willing to pay his proportionate part of such expenses, made a tender thereof to the defendants, and now tenders his undivided one-fourth of all cost and expense incurred in such joint enterprise, including the acquisition and development of the Bryson lease.

He prays that an accounting be had that he have judgment establishing his right to an undivided one-fourth interest in the Bryson lease, subject to the reservations in favor of the owner; that the court determine the amount due from him to the coadventurers, and for all other and further relief, legal and equitable, to which he may be entitled.

The defendants filed a general demurrer which was sustained; the plaintiff refused to amend; his cause was dismissed and from this action of the court this appeal is prosecuted.

The appellees, to justify the ruling of the court, urge that only facts well pleaded are taken as true against a general demurrer and the allegations of appellant that a joint enterprise existed between him and the appellees were only conclusions of the pleader and the court correctly sustained their general demurrer.

It is apparently conceded that the appellees, including the defendant corporation, were competent in law to engage in a joint enterprise with the appellant. McDaniel v. State Fair, Tex.Civ.App., 286 S.W. 513, writ refused; Burton-Lingo Co. v. Federal Glass & Paint Co., Tex. Civ.App., 54 S.W.2d 170; Indiahoma Refining Co. et al. v. Wood et al., Tex.Civ. App., 255 S.W. 212.

A joint adventure is defined in 33 C. J. p. 841, as follows: "A joint adventure has been aptly defined as a 'special combination of two or more persons where, in some specific venture a profit is jointly sought without any actual partnership or corporate designation.'"

The definition in 25 Tex.Jur., pp. 159 and 160, is "A joint adventure * * * is constituted by special combination of persons in the nature of a partnership—more particularly a limited or special partnership—engaged in the joint prosecution of a particular transaction for mutual benefit or profit."

These definitions are quoted by Associate Justice Sharp with apparent approval in Holcomb et al. v. Lorino, 124 Tex. 446, 79 S.W.2d 307.

▰ The allegations in the petition assert that by the terms of the written contract the coadventurers named had entered upon a joint enterprise to drill and develop certain described property for oil and gas; that the contract provided that the corporate defendant should become the operating manager, obligated to operate the business in good faith for the joint benefit of the coadventurers and to use all information had and acquired by such enterprise for the mutual benefit of the members thereof. In view of these allegations and the accepted legal meaning of the words "joint adventure" appellant's contention that such allegations were only the conclusion of the pleader, is not,

in our opinion, tenable. While the appellant could have alleged the facts he relied upon in greater detail, the deficiency complained of could not be reached by a general demurrer.

▰ There is some confusion in the decisions relative to conclusions which are subject to general exceptions, but the opinion of the Supreme Court in Garza et al. v. Kenedy et al., 299 S.W. 231, 233, contains the latest expression we have found thereon and the rule is said to be: "In testing the sufficiency of a petition by a general demurrer, much liberality is indulged by the courts, even though much of the pleading is made up of what is generally termed "conclusions of the pleader,' drawn from the facts not revealed. Yet, such a defect in pleading can only be reached by special demurrer against that defect and cannot be reached by general demurrer." This holding is followed in Hanson et al. v. Pratt, Tex.Civ.App., 51 S.W.2d 629; Arkansas Drilling Co. et al. v. Burma Oil & Gas Co. et al., Tex.Civ.App., 68 S.W.2d 336, and Fagan v. Wadel-Connally Hardware Co., Tex.Civ.App., 89 S. W.2d 1080.

The appellee's claim that should it be held that appellant had sufficiently pleaded a joint adventure, the court correctly sustained their general demurrer because, if considered as a mining partnership, the duties of the parties incident to such relation did not arise until oil was discovered on the Raley lease, which discovery was not alleged to have been made before the acquisition of the Bryson land and for the additional reason that under the record the joint enterprise could in no event affect the Bryson property which was acquired prior to the asserted agreement growing out of the conversation claimed to have been had on the derrick floor of the Raley well when the oil sand was reached.

▰ The instrument dated September 23, 1936, was neither a lease nor an assignment of a leasehold estate, but a conditional contract providing that the grantor named therein would execute a lease to A. L. Cato in consideration of the drilling of the well on the Raley land, provided a well thereon was obtained with an initial production of 50 barrels or more and a well be spudded in on his land on or prior to December 1st thereafter, and that any lease made should be subject to the conditions contained in such contract. The

petition states that pursuant to such agreement a lease was executed, transferring the Bryson land to A. L. Cato, for and in consideration of the performance of the contract between appellant and the corporate appellee, and that such lease was recorded in Jack county on December 11, 1936; that the acquisition of the Bryson lease was contemplated at the time the contract for the joint adventure was made; that such contract provided the corporate defendant should operate the business in good faith and use all information had or acquired in the prosecution of such enterprise for the mutual benefit of the co-adventurers. In view of the provisions of this conditional contract and the allegations in the petition, we think it sufficiently appears that the contract for the lease was not consummated until oil was produced on the Raley lease and that such production was had after the conversation alleged to have occurred on the derrick floor of the Raley well when the oil sand was reached.

The record, we think, discloses that a joint enterprise was created by the contract sued upon; that the members thereof were acting in a fiduciary capacity; that the Bryson property was obtained, at least in part, with the proceeds of the joint enterprise; that the purchase thereof was contemplated at the time of the formation of the joint enterprise; that the purchase and development of the Bryson lease was so interrelated with the acquisition and development of the Raley property as to constitute a part of the joint enterprise. This conclusion, we think, is sustained by the following authorities:

"Where persons engage in a common enterprise by way of joint adventure, each has a right to demand and expect from his associates the utmost good faith in all that relates to their common interests. Within the scope of the enterprise they stand in a fiduciary relation each to the other, and are bound by the same standards of good conduct and square dealing as are required between partners. This obligation begins with the opening of the negotiations for the formation of the syndicate, applies to every phase of the business which is undertaken, and continues until the enterprise has been completely wound up and terminated. No member in promoting or carrying on the common enterprise can lawfully obtain for himself, any secret profit or advantage therefrom, nor can he, without the consent of his associates, engage in any individual operations harmful to the business in which he and his associates are engaged or acquire any interest in the property employed in the venture antagonistic to the interest which they have in it." 33 C.J. par. 36, pp. 851, 852.

"Until the adventure has terminated or the enterprise has been abandoned a joint adventurer cannot exclude his associates from an interest in the property by purchasing it for his individual account, nor can he acquire for his individual benefit an interest therein antagonistic to the interest which he acquires for his associates, even though the interest which he acquired individually was not such as was within the contemplation of the parties at the time they entered into the joint adventure." 33 C.J. par. 48, pp. 855, 856.

This text is in harmony with the holding by the Commission of Appeals in Thompson et al. v. Duncan, Tex.Com.App., 44 S.W.2d 904; Griffin v. Reilly, Tex.Civ.App., 275 S.W. 242; Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1; Lind v. Webber, 36 Nev. 623, 134 P. 461, 135 P. 139, 141 P. 458, 50 L.R.A.,N.S., 1046, Ann.Cas.1916A, 1202.

The judgment is reversed, and the cause remanded.