## DONNELLY v. GUTHRIE.

### No. 13476.

United States Court of Appeals
Fifth Circuit.

Feb. 7, 1952.

Rehearing Denied March 3, 1952.

Ralph B. Shank, Dallas, Tex., for appellant.

John H. Alvis, Abilene, Tex., for appellee.

Before HOLMES, RUSSELL, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Appellant, Donnelly, sued appellee, Guthrie, for an accounting of a joint adventure in the negotiation for, obtaining, and later selling two certain oil and gas leases covering approximately 21,000 acres of land in the Wallace Ranch in Kent County, Texas.

The leases for a primary term of ten years were secured by Donnelly and Guthrie in 1944 and immediately sold to Union Oil Company of California and the net profits divided. In 1946, without Donnelly's knowledge, Guthrie obtained a reassignment from Union of the leases insofar as they covered approximately 11,000 acres of land. In March, 1950, Donnelly discovered the records of the reassignment and of Guthrie's subsequent resale of parts of the leases. It is one-half of the additional profit made from the resale of parts of the returned leases which Donnelly seeks to recover.

The district court held that the joint adventure became a closed transaction with the original sale of the leases to Union and the division of the net profits, that Guthrie afterward *bought* back part of the leases, but that this fact did not revive the original joint interest, and judgment was rendered for the defendant.

Wallace, the owner of the ranch, agreed to execute a lease on the 21,000 acres for an initial payment of one dollar per acre, plus annual delay rentals of fifty cents per acre, and certain royalties from oil and gas produced from the leased premises. Donnelly and Guthrie agreed between themselves that they would not enter into the lease with Wallace until they had secured a sale for it, and that to simplify the transactions, the lease would be taken in the name of the one who secured the sale. After Guthrie had obtained the agreement of Union to purchase the lease at an initial payment of two and one half times that to which he and Donnelly were obligated, the lease was executed by Wallace to Guthrie.

In the examination of the title by the attorneys for Union it was discovered that Douglas Oil Company owned a one-half interest in the minerals under 364 acres. Guthrie succeeded in securing a lease from Douglas Oil Company for $2.00 per acre also in Guthrie's name. Both the original Wallace lease and the Douglas lease were then assigned by Guthrie to Union. That Company did not know of Donnelly's interest in or connection with the transaction.

To evidence Donnelly's interest, Guthrie gave him a letter dated March 27, 1944 and reading as follows:

"Mr. W. J. Donnelly,
Big Spring, Texas
"Dear Sir:

"This will acknowledge that you have an undivided ½ interest in the net profits made on a certain oil and gas lease being the E. E. Wallace land in Kent County, Texas.

"The net profits being construed as the profit made after expenses, commissions and etc. are taken out over and above the actual bonus being paid for this lease.

"Very Truly Yours,
(S.)   C. W. Guthrie,
(C. W. Guthrie)."

Donnelly did not understand the reference in the letter to "commissions"; Guthrie explained that he was paying a named individual who had helped him in the sale a commission on the leases and Donnelly acquiesced in that arrangement. Guthrie testified that he had agreed with a named employee of Union that if that company bought the leases at $2.50 per acre he would pay to said employee one-third of the net profits, and that he did pay him $10,399.00 plus $24.25.

Guthrie further testified that in February, 1946 he was in the office of Union when its general manager told him that that company was not going to pay the delay rentals on around 11,000 acres of the leased lands, that he (Guthrie) asked him to reassign to him the leases on those lands, that the manager took it up with the company and parts of the leases were reassigned to him before the rentals became payable on March 10, 1946. By paying delay rentals for the years 1946 through 1949, Guthrie maintained the leases in effect but on only 1964 acres. In that year he made an assignment of the lease on 1600 acres at $10.00 per acre, or $16,000.00, and an assignment of the 364 acre Douglas lease for $18,180.20, or a net profit on both transactions of over $30,000.00.

There was no cash consideration for the reassignment of the leases by Union to Guthrie. Guthrie testified that the consideration, though not expressed in writing, was his agreement "to try to get a well drilled" on the lands, the well to be started before the rentals became due and that thereby the rentals on the whole 21,000 acres would be deferred. Guthrie was not able to do that.

"Q.   But, nevertheless, because you assigned the lease to them, they reassigned it to you before March 10, 1946?   A.   Yes, sir.

"Q.   They reassigned it to you on March 4, 1946?   A.   That is right.

"Q.   You paid no cash for it?   A.   No cash.

"Q.   And that is the same Wallace lease that came back to you, that went in to you on March 10, 1944?   A.   That is right."

We think that the district court erred in finding that, as a separate transaction, Guthrie *bought* back the part of the leases from Union. Guthrie's alleged promise "to try to get a well drilled" was unenforceable. In our opinion the evidence shows that the motive for the return of part of these leases to Guthrie was mainly, if not solely, the fact that the leases had been taken in his name and he had assigned them to Union. Guthrie cannot thus be permitted to profit personally by reason of his fiduciary relation to Donnelly.[1] He is accountable to Donnelly for his share of the net profits accruing from the resale of parts of the returned leases and the judgment is therefore

Reversed.

---

1.   Thompson v. Duncan, Tex.Com.App., 44 S.W.2d 904; Whatley v. Cato Oil Co., Tex.Civ.App., 115 S.W.2d 1205; Commercial National Bank in Shreveport v. Parsons, 5 Cir., 144 F.2d 231, 236; Commercial Nat. Bank v. Connolly, 5 Cir., 176 F.2d 1004, 1013, affirmed 5 Cir., 189 F.2d 608; 4 Pomeroy's Equity Jurisprudence, sec. 1074.